IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CURTIS N. KAAHANUI JR., | CIV. NO. 23-00322-SOM-WRP |
| Plaintiff, | ORDER DISMISSING COMPLAINT; ORDER DENYING AS MOOT APPLICATION TO PROCEED IN FORMA PAUPERIS |
| vs. | |
| HONOLULU POLICE DEPARTMENT, | |
| Defendant. | |

**ORDER DISMISSING COMPLAINT; ORDER DENYING AS MOOT APPLICATION TO PROCEED *IN FORMA PAUPERIS***

I.    INTRODUCTION.

On August 3, 2023, Plaintiff Curtis Kaahanui Jr. filed a Complaint and an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"). See ECF Nos. 1, 3. The court has screened the Complaint, as it must do under 28 U.S.C. § 1915(e)(2). The court concludes that the Complaint fails to state a claim on which relief can be granted. Accordingly, the court dismisses the Complaint and denies the IFP Application as moot. Kaahanui is granted leave to amend the Complaint, but must do so by August 28, 2023.

II.    LEGAL STANDARD.

To proceed in *forma pauperis*, Kaahanui must demonstrate that he is unable to prepay the court fees and that he has sufficiently pled claims. See *Lopez v. Smith*, 203 F.3d 1122,

1129 (9th Cir. 2000). Claims are not sufficiently pled if they are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2); *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (the *in forma pauperis* statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.").

In screening a *pro se* litigant's complaint, the court must construe its contents liberally. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants.") (quotation marks and citation omitted).

### III.     THE COMPLAINT'S ALLEGATIONS.

Kaahanui alleges that the Honolulu Police Department ("HPD") entered his home unlawfully and threatened to plant a gun in his car. ECF No. 1. No further factual allegations are included in the Complaint. He does not identify who exactly committed these acts, nor does he say whether the firearm was actually planted in his car.[1]

---

[1] Kaahanui used a court form for his Complaint. In Section II.A, which concerns jurisdiction, Kaahanui writes "police corruption."

**IV.     ANALYSIS.**

As noted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the factual allegations in a complaint, when assumed to be true, must be enough to raise a right to relief above the speculative level. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Kaahanui does not explicitly identify what law is at issue in his case. He says that federal law is implicated, ECF No. 1 (Section II), but he does not point to a specific statute or constitutional right that HPD violated. In the interest of liberally construing the Complaint, the court reads it as a 42 U.S.C. § 1983 action. Accordingly, for the Complaint to survive the court's IFP screening, it must provide factual allegations that allow the court to draw the reasonable inference that some "conduct deprived [Kaahanui] of a federal constitutional or statutory right" and that the conduct "was committed by a person

---

ECF No. 1. In Section 2.B.3, concerning the amount in controversy, Kaahanui writes "same case as Gerard Puana vs. Kealoha Corruption case." *Id.* This court is familiar with the cases involving Mr. Puana, but, given the lack of explanation accompanying these statements, the court disregards them. Should he file an amended complaint, he should either clarify the meaning of these statements or omit them entirely.

acting under color of state law." *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Deprivation of a Federal Constitutional Right.

Kaahanui makes two allegations in his Complaint: HPD threatened to plant evidence in his car, and HPD unlawfully entered his home.

On their own, threats to plant evidence do not give rise to § 1983 liability. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong"); *see also Loritz v. Pfingst*, 94 F. App'x 439, 440 (9th Cir. 2004) ("a mere threat to do an unconstitutional act does not create a constitutional wrong."). But they are not immaterial; in some instances, threats may be an ingredient of a statutory or constitutional violation. *See id.* (threats to plant evidence can give rise to § 1983 liability when a plaintiff's First Amendment conduct is a substantial or motivating factor in the defendant's decision to make the threat). That is not the case here, however, because Kaahanui does not situate the alleged threat within a larger scheme. On the present record, the threat to plant evidence stands alone. The court cannot, on this basis, draw a reasonable inference that HPD violated Kaahanui's rights.

Warrantless entry is a different matter. It can and often does amount to a constitutional violation. Kaahanui alleges that HPD "illegally br[oke] into [his] home without a warrant or cause." ECF No. 1. If true, HPD's conduct could amount to a violation of the Fourth Amendment. *See United States v. U.S. Dist. Ct. for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed").

That being said, the present record lacks many important details about the alleged unlawful entry, including the date it occurred and who was involved. Such a spare allegation may not satisfy the pleading standard. For purposes of this Order, the court need not decide this issue because the Complaint must be dismissed either way, for the reasons described below. But Kaahanui should consider the pleading standard when drafting his subsequent complaint, should he choose to file one. If he fails to provide more detailed allegations, his subsequent complaints may meet the same fate as this one.

### B. A Person Acting Under Color of State Law.

For a § 1983 claim to succeed, it must have a proper defendant, that is, a person who allegedly violated the plaintiff's federal rights while acting under color of state law. 42 U.S.C. § 1983. Because Kaahanui's Complaint fails to identify such a person, it must be dismissed.

Kaahanui brought his action against HPD, which is not a proper defendant for § 1983 purposes. ECF No. 1. "[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of § 1983." *United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005). Even if that were not the case, HPD would still not be a proper defendant because it is a division of the City and County of Honolulu and is not separately subject to suit under § 1983. *See Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1214 (D. Haw. 2012). For these reasons, if Kaahanui intends to file an amended complaint, alleging § 1983 claims, he must identify a different defendant.

Section 1983 cases are sometimes brought against individual officers. Depending on the circumstances, they may be proper defendants. However, should Kaahanui decide to bring future claims against one or more officers, he should consider how qualified immunity might affect those claims. *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009) ("An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment."). Most importantly, Kaahanui should be aware that the court will dismiss any claims he brings against officers "if it is clear from the complaint that [he] can present no evidence that could overcome a defense of qualified immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016), *as amended on*

*reh'g* (Apr. 15, 2016).

If Kaahanui believes that the violation of his rights resulted from HPD's policies or conduct, the proper defendant is likely the City and County of Honolulu. If his amended complaint targets the City and County of Honolulu, it will have to include additional details. To state a § 1983 claim against the City and County of Honolulu, Kaahanui would have to allege facts showing that it has customs or policies that amount to deliberate indifference to his constitutional rights and that those customs or policies were the moving force behind the warrantless entry of his house. *See Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 617 (9th Cir. 2014). Kaahanui could make this showing by identifying a specific municipal policy in favor of illegal entry. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Alternatively, he could show that the municipality's poor training and supervision of officers constitutes deliberate indifference to the rights of others. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). He could also show that the City and County of Honolulu ratified the conduct of those who entered his home. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). As long as there are facts to support it, any of these approaches could demonstrate municipal liability.

The present record lacks any indication that the City

7

and County of Honolulu is liable.  The Complaint does not mention policies, training, or ratification.  The court therefore cannot reasonably infer that the City and County of Honolulu is liable in any way for the allegedly unlawful entry into Kaahanui's home.

**V.     CONCLUSION.**

The Complaint is dismissed, and the IFP Application is denied as moot.  **The court grants Plaintiff leave to file a "First Amended Complaint" that states a viable claim or claims no later than August 28, 2023.**  Plaintiff may submit another IFP Application at that time.  Failure to file an Amended Complaint by August 28, 2023, as well as to pay the applicable filing fee or to submit a new IFP Application, will result in the automatic dismissal of this action.

The court provides some guidance to Kaahanui in case he decides to file a First Amended Complaint.  First, he should include as the title of his new document "First Amended Complaint."  If Kaahanui chooses to use a court form, he may write the words "First Amended" before the word "Complaint."  Kaahanui may not incorporate anything by reference (including his original Complaint) in the First Amended Complaint.  Instead, the First Amended Complaint must allege the factual details underlying the claims asserted in it.

Kaahanui may use a court form from this court's website, available at https://www.hid.uscourts.gov/

8

court-forms/civil (last visited August 8, 2023). However, in some circumstances, others forms may be more applicable. The Clerk of Court is directed to provide to Kaahanui copies of Form Pro Se 1 (Complaint in a Civil Case) and AO 240 (Application to Proceed Without Prepayment of Fees & Affidavit).

Second, if Kaahanui files an amended complaint and includes § 1983 claims, he should name a proper defendant. He should at least consider whether his claims can overcome qualified immunity. If he names the City and County of Honolulu, he should state in simple terms how it is directly liable for the events that transpired.

Third, in any future filings, Kaahanui should detail the relief he seeks, including the amounts of any actual damages claimed and the bases for these amounts. In his original complaint, Kaahanui says there is $30,000,000 at issue in this case, ECF No. 1., but he fails to explain or justify that number other than to refer to the emotional distress he says HPD's conduct caused. *Id.*

Fourth, Kaahanui should consider whether he has a basis for styling this case as a class action. Checking the class action designation on the Civil Cover Sheet, ECF No. 2 (Section VII), does not on its own support class action treatment. The Civil Cover Sheet is simply an administrative aid and not actually part of the Complaint. *See Favors v. Coughlin*, 877 F.2d

219, 220 (2d Cir. 1989). If Kaahanui intends for this case to be a class action, he will have to satisfy the requirements mandated by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 23. He should also be aware that courts typically prohibit *pro se* litigants from bringing class actions. *See, e.g.*, *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *cf. Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity").

To summarize, Kaahanui may file a First Amended Complaint stating one or more viable claims no later than August 28, 2023. He may also submit another IFP Application by that deadline or choose to pay the applicable filing fee. Failure to meet the deadline of August 28, 2023, will cause this action to be dismissed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 10, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Curtis N. Kaahanui Jr. v. Honolulu Police Department*, Civ. No. 23-00322-SOM-WRP; ORDER DISMISSING COMPLAINT; ORDER DENYING AS MOOT APPLICATION TO PROCEED IN FORMA PAUPERIS.